## PEOPLE v. KLEE.

### Cr. No. 889; July 9, 1902.

#### 69 Pac. 696.

**Embezzlement by Bailee—Evidence.**—Penal Code, Section 507, makes it embezzlement for one to convert property intrusted to him as bailee. Section 511 provides that, on any indictment for embezzlement, it is a sufficient defense that the property was appropriated openly and under a bona fide claim of title, though such claim is untenable. On a prosecution for the embezzlement of a mare sold by defendant while in his possession, prosecutor testified that he intrusted her to defendant to have her for her keep until demanded; that prosecutor stated a price that he would sell the mare for, but that, in answer to a statement by defendant that he might buy the mare, prosecutor said that that would be "an after-consideration." Defendant testified that prosecutor stated that he might buy the mare at any time for $55. Defendant did not inform prosecutor of the sale of the mare, or remit any of the alleged price. Held, that the evidence was sufficient to sustain a conviction.

**Embezzlement by Bailee — Intent. — On** a Prosecution under Penal Code, section 507, making it embezzlement for one to convert property intrusted to him as a bailee, the question whether it was error to fail to instruct that defendant must have "feloniously" intended to appropriate the property was immaterial on appeal; the jury having been instructed that the test to be applied for determining the guilt or innocence of defendant was whether he intended to permanently deprive prosecutor of his property.

**Embezzlement by Bailee—Instruction.—On** a Prosecution under Penal Code, section 507, for the embezzlement of property by a bailee,

the court instructed substantially in the language of Civil Code, section 1572, which defines "fraud." Held, that though the section defines "fraud" within the meaning of the chapter relative to contracts, and had no application, there was no prejudice to defendant, the instruction being followed by one stating that the question was whether. defendant intended permanently to deprive the owner of his property.

APPEAL from Superior Court, Ventura County; B. T. Williams, Judge.

Louis Klee was convicted of embezzlement and he appeals. Affirmed.

W. E. Shepherd for appellant; Tirey L. Ford, attorney general, and A. A. Moore, Jr., deputy attorney general, for the people.

HAYNES, C.—The defendant was tried upon an information for embezzlement, was found guilty, and appeals from the judgment and the order denying a new trial.

The property alleged to have been embezzled was a gray mare, the property of one J. C. Hickey, which had been intrusted to defendant on the 18th of October, 1901, "to use and care for as a bailee." A brief preliminary statement of facts is to the effect that the defendant was engaged in selling paper bags, twine, etc., through the country, carrying his stock in a covered delivery wagon, with one horse, and wished to get a second horse "for its keep"; that he obtained from the prosecuting witness, J. C. Hickey, in the city of Los Angeles, a gray mare, which he drove with his own horse, and at or near Saticoy, in Ventura county, traded her to one Willis for another horse, paying $25 "to boot," and continued on northerly, intending to go to Oakland, and was detained at Niles, in Alameda county, by a constable, upon information from Los Angeles. Defendant's contention is that he had an option to purchase the mare at a stated price, and was therefore authorized to dispose of her. The prosecuting witness, J. C. Hickey, testified that he was "engaged in buying and selling horses, keeping a sale stable"; that defendant advertised that he wanted a horse for its feed; that he went to see him, but he was absent; that he came to his stable that evening, looked at the mare, and seemed to like her, and an agreement was made that he should have

her for her feed, to be redelivered at any time he saw proper to make a demand upon him, "in three to five days, maybe a week, or longer," and wanted to know what territory he expected to go over; that he said he had just come back from a trip through the southern part of Los Angeles county and Orange county, and was going back over the same territory; that the mare was worth from $60 to $65, and defendant said he would take her; that nothing was said about purchasing the mare, "except he said, 'If this mare suits me after having driven her, I will buy her, as I have got to buy a horse.' I said, 'That will be an after-consideration' "; that there was no conversation with reference to selling the mare to him, or as to the matter of price; that he saw defendant driving the mare two days afterward, but did not see him again until he saw him in San Francisco, some three weeks afterward; that he went to Niles on the 7th of November, and caused his arrest in San Francisco on the 13th of November. Upon cross-examination he testified that defendant said: "If I like the mare after having driven her, what will be your price?" and that he replied, "That will be an after-consideration. Q. The price you made upon her was $65? A. Sixty dollars or $65—I don't remember—I told him; I don't remember what I said about it. Q. She was worth it? A. I considered her worth $65 Q. Either $55, $60 or $65, or thereabouts? A. I don't think I said anything about $55." He further testified that he got his mare back through information obtained by the sheriff from Mr. Willis, of West Saticoy, on November 8th; that he got the mare back about November 23d, and sold her for $62.50. On redirect examination Mr. Hickey testified: "Klee said, 'I may want to buy this mare if I like her after having driven her.' I said, 'That will be an after-consideration.' There was something as regards price; that is, his buying her. I told him that would be an after-consideration. I think that was the purport of it. There was no understanding or agreement between us, in any regard, in reference to the sale of the mare." L. E. Willis, with whom defendant traded the mare, testified that he met defendant near West Saticoy, and was asked whether he had a horse to trade. Defendant said he was working for a paper firm at Los Angeles, and that the team belonged to them; that he asked defendant if they had authorized him to trade and

to give boot, and he said they had, and the trade was made, the defendant paying $25 to boot; that he did not remember the name of the firm; that he said he was selling paper goods, and asked the road to Montalvo, and that he came from Los Angeles; that he surrendered the mare to Mr. Hickey, and got his horse from Niles. He said he would be back in four or five weeks or months, witness was not sure which. The defendant testified in his own behalf: That he told Mr. Hickey his business was that of selling paper bags. That he traveled in the country, north and south, and stayed out as long as his bags lasted. That Mr. Hickey showed him the mare, and said he sold her to a brick mason a few weeks before, and he took her back. "I said, 'If you say she will do my work, I will use her; but, before we go any further, I want to know the price that horse will be, in case I want to buy her, or if something should happen to her on the road.' He said, 'That is an after-consideration.' I said, 'Mr. Hickey, I don't do business that way. I must know what the horse will cost, or I don't want her. What will the price be?' He said, 'If that horse suits you, at any time you can buy her for $55.'" That on this understanding he started out on October 22d. That about ten miles east of Saticoy, where the sand was, she would not pull a pound, and stopped, and when he tried to get her to go she commenced to kick the sorrel horse, and that his horse pulled the load clear into Saticoy. That when he would hit her she would kick over the singletree. That he was on his way to Oakland, and expected to return in six or seven weeks with Mr. Hanson, a manufacturer of face lotions, with whom he had corresponded, and that he wanted to see his two little ones, and to arrange to send his oldest child to his father, in New York. That the horse he got from Mr. Willis was worth $25 more than the mare, and that he had not received that money back. That Mr. Hickey never made any statement to him as to the value of the mare, other than $55. That there was no secrecy in his movements at Saticoy. Then he told Mr. Willis the mare did not belong to him, but, under the claim that he had a right to buy the mare at $55, he traded her, without any intention of defrauding anybody, and intending when he got to Oakland to send Mr. Hickey the money. Upon cross-examination, defendant said he told Mr. Hickey that he was

going up north, wherever he could sell paper; that he intended to go to Oakland, but did not say so; that he heard Mr. Hickey's statement that he was to have the mare from three to six days, until he demanded her, but that was not true; that he wanted the horse for six or seven weeks; that Hickey said, "I may want to make a demand on you," and that he replied, "You can have her at any time if she does not suit me." Mr. Hanson, called by defendant, testified to a conversation with Mr. Hickey at Niles in which the latter denied that he said the price of the mare was $55, and said it was $70, and that witness offered to settle at that price, and that he was authorized to do so. Mr. Hickey was called by the defendant in rebuttal, and testified that he did not hear everything that was said unless people speak pretty loud, but he made it a point to know what was said.

Defendant's motion for a new trial was based upon the grounds: (1) That the evidence was not sufficient to justify the verdict; (2) that the court erred in its instructions to the jury; and (3) that the verdict is against law. The evidence is brought up by bill of exceptions.

The act of the defendant upon which the information is based was the trading of the mare to Mr. Willis, and the statute under which it was framed is section 507 of the Penal Code, which relates to embezzlement by a bailee. Defendant calls our attention to section 511 of the same code, which provides as follows: "Upon any indictment for embezzlement, it is a sufficient defense that the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable. But this provision does not excuse the unlawful retention of the property of another to offset or pay demands held against him." This section was embodied in an instruction requested by the defendant, and given to the jury, and presented the ultimate fact to be determined. It would be sufficient here to say that the evidence was materially conflicting, and that in such case the verdict of the jury should not be disturbed. In view, however, of the very earnest contention of counsel for defendant, we will briefly call attention to some of the facts which we think fully justified the conclusion embodied in the verdict. It may be conceded that the mare was for sale, and that Mr. Hickey stated a price that he would accept for

her; but there was no agreement to sell her, nor any color of authority given to the defendant to dispose of her while out upon his trip. Defendant was a stranger to Mr. Hickey, and there was no intimation that he would sell otherwise than upon payment in cash. There was nothing said from which the defendant could possibly infer that he might dispose of her and pay at some future time. It would seem well-nigh impossible that he could "in good faith" suppose or believe that he had a right to dispose of her as he did. But there are other facts which strengthen the conclusion reached by the jury. He was asked by Mr. Hickey where he was going, and said he had just returned from the southern part of Los Angeles county and Orange county, and was going back over the same ground. This is denied by defendant, who testified that he said he was going north; that he intended to go to Oakland, but did not say so, and expected to be gone six or seven weeks. Stress is laid upon the assumption that Hickey let defendant have the mare for the purpose of making a sale to him. But the evidence shows otherwise. Mr. Hickey testified that before defendant obtained her he had sold her to a brick mason, who undertook to drive her; that she reared and fell over and broke the shafts, and he took her back; and defendant testified that Mr. Hickey said he would let him have the horse, "to take down some of its fire." But he would not be likely to let her for a trip to Oakland and return for that purpose, or any other, for the compensation of having her fed. Only one other fact need be noticed. Defendant did not inform Mr. Hickey of the disposition of the mare, as he might have done by letter from Saticoy, as a man acting in good faith would have done, nor remit to him the alleged price of the mare. "We cannot say, as a matter of law, that the jury was not justified in finding the intent as alleged from the acts of the defendant, and the circumstances under which they were committed": People v. Johnson, 131 Cal. 514, 63 Pac. 842.

As to the instructions, it is contended that the jury were not instructed that, to constitute the crime, they must find that the defendant "feloniously" intended to appropriate the mare. It is not necessary to consider whether the omission of that word in the instructions requested by the prosecution constituted an error, since the jury were instructed at de-

fendant's request, "that if, from the evidence, you have a reasonable doubt as to the intention of the defendant being felonious and fraudulent, that doubt should be solved in favor of the defendant."

It is also contended that the reading of section 506 of the Penal Code as an instruction constituted prejudicial error. That section, it is true, relates to trustees and others intrusted with property for the use of other persons; but we see nothing in it that could mislead the jury, who were fully and accurately instructed as to embezzlement by a bailee.

So, defendant excepted to an instruction substantially in the language of section 1572 of the Civil Code, defining "fraud." That section, it is true, defines "fraud" within the meaning of the chapter of the code relating to contracts, and had no special application to the case, but did not prejudice the defendant; and following that instruction, which was given at the request of the prosecution, the jury were instructed, at defendant's request, that "the test of the law to be applied to the circumstances of this case for the purpose of determining the guilt or innocence of the defendant is, did he intend to permanently deprive the owner of his property?"

Three instructions requested by defendant were refused. We see no error in refusing them, as every matter contained in the first two had been given, and the last was properly refused. That request was based upon section 512 of the Penal Code. There was no evidence that the defendant restored the property before an information was laid before the committing magistrate, nor any evidence as to the date at which such information was laid.

Finding no error to the prejudice of defendant, I advise that the judgment and order appealed from be affirmed.

We concur: Cooper, C.; Gray, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.